## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TRACEY EDWARD BROWN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-15-29-D** |
| | ) | |
| **JIM FARRIS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Tracey Brown, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state court conviction. (ECF No. 1). Mr. Farris has filed his Response to Petition for Writ of Habeas Corpus. (ECF No. 11). For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I.    PROCEDURAL BACKGROUND

### A.    Pretrial through Conviction

In 2009, Petitioner was charged with 4 crimes and retained defense attorney Jack Herndon. (ECF No. 2:7). At a pretrial conference on October 29, 2010, the prosecutor informed the trial judge that Mr. Herndon had previously represented the State's complaining witness, Jesse McDonald. (ECF No. 2:8). Mr. Herndon confirmed the information and was immediately dismissed as Petitioner's attorney. (ECF No. 2:8). The dismissal was documented in a Minute Order which stated:

> The Court finds that defense attorney Jack Herndon previously
> represented the victim so that there is a conflict of interest in his
> representation of Tracey Edward Brown. Jack Herndon is therefore "fired"

by the court as attorney for Tracey Edward Brown who is allowed 20 days
in which to retain new counsel. The case is reset on the pretrial docket for
PT Cont to 12-17-10 @ 9 A.M.

Court Minute, *State of Oklahoma v. Brown*, Case No. CF-2009-5049 (Okla. Co. Oct. 29,

2010).

Following Mr. Herndon's dismissal, Petitioner retained a second attorney, Ted

Pool. (ECF No. 2:10). A jury convicted Mr. Brown and he was sentenced to prison. (ECF

No. 1:1).

### B. Direct Appeal

Represented by attorney Mark Hoover, Mr. Brown filed a direct appeal. (ECF No.

11-1). In part, Petitioner alleged that the trial court violated the Sixth Amendment by

depriving Petitioner of his counsel of choice when it "fired" Mr. Herndon. (ECF No. 11-

1:9-16). The Court of Criminal Appeals of the State of Oklahoma (OCCA) rejected the

claim on the merits and affirmed the conviction. (ECF No. 1-2).

### C. Application for Post-Conviction Relief (*pro se*)

On April 1, 2013, Mr. Brown filed a *pro se* Application for Post-Conviction Relief

(ECF No. 11-5), alleging three claims:

1. Mr. Herndon was ineffective for failing to communicate and discuss
   a plea offer;

2. Mr. Pool was ineffective for failing to: (1) discover whether a plea
   agreement had been offered to Petitioner prior to trial and (2) relay
   and discuss a plea offer which had been made the day of trial, and

3. On direct appeal, Mr. Hoover was ineffective for failing to raise the
   issues of both trial attorneys' ineffectiveness.

(ECF No. 11-5:12-26, 38-52).

### D.  Supplemental Application for Post-Conviction Relief (represented)

On December 4, 2013, Mr. Brown, through an attorney, filed a Supplemental Application for Post-Conviction Relief (ECF No. 11-4). There, Mr. Brown asserted a fourth claim:

> 4.      Mr. Hoover was ineffective for failing to *adequately* argue the "counsel of choice" claim on direct appeal.

(ECF No. 11-4:28-40). Specifically, Petitioner claimed that Mr. Hoover failed to: (1) challenge the procedure by which Mr. Herndon had been dismissed, (2) argue that the trial court improperly shifted the burden of proof to Mr. Brown to prove that a conflict did not exist, and (3) demonstrate the absence of any conflict warranting dismissal. (ECF No. 11-4:28-40).

### E.      District Court's Resolution of Post-Conviction Claims

On February 4, 2014, the district court held an evidentiary hearing on Petitioner's four post-conviction challenges. Following the hearing, the district court issued Findings of Fact and Conclusions of Law, rejecting all four claims on the merits. (ECF No. 11-5). Additionally, the court held that the fourth claim was barred by *res judicata*, because on direct appeal, "the exact same claim was argued but just in a different way." (ECF No. 11-5:6).

### F.      Post-Conviction Appeal

On October 22, 2014, Petitioner filed a post-conviction appeal. (ECF No. 11-6). Substantively, Mr. Brown presented three claims:

> 1.      The trial court violated his Sixth Amendment right to counsel of choice by dismissing Mr. Herndon,

2.      Mr. Hoover was ineffective for failing to *adequately* argue the "counsel of choice" claim on direct appeal, and

3.      Mr. Hoover was ineffective for failing to raise both trial attorneys' ineffectiveness on direct appeal.

(ECF No. 11-6:12-34).[1]

### G.    OCCA's Affirmance of Denial of Post-Conviction Relief

In the Order Affirming Denial of Post-Conviction Relief, the OCCA stated:

> We set forth in *Logan* that in reviewing a claim of ineffective assistance of appellate counsel under Strickland, a court must look to the merits of the issues that appellate counsel failed to raise. Only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient and also whether the failure to raise the omitted issue on appeal prejudiced the defendant; i.e., whether there is a reasonable probability that raising the omitted issue would have resulted in a different outcome in the defendant's direct appeal. In the present case, Judge Bass looked to the merits of the issues raised and concluded that appellate counsel's performance was not deficient. We agree. The counsel of choice claim was raised on direct appeal and is barred by the doctrine of *res judicata* and the remaining issues have been waived.

(ECF No. 1-1:3).

## II.   THE HABEAS PETITION

In the habeas petition and accompanying brief, Mr. Brown asserts two grounds for relief. (ECF Nos. 1 & 2). These grounds mirror the claims he asserted in his post-conviction appeal. In substance, Mr. Brown asserts three claims. In Ground One, Petitioner argues: (1) the trial court violated his Sixth Amendment right to his counsel

---

[1] Mr. Brown's first proposition was titled: "The District Court's Application of Res Judicata to Deny Mr. Brown's Counsel of Choice Claim Resulted in a Clear Violation of Federal Law." (ECF 11-6:12). In the denial of Post-Conviction relief, the district court applied *res judicata* to Petitioner's claim that his appellate counsel had been ineffective for failing to adequately argue the choice of counsel claim on direct appeal. (ECF No. 11-5:6). The heading for Proposition One of his Post-Conviction appeal, however, is misleading, as Petitioner's substantive argument does not challenge the district court's application of *res judicata*, rather Mr. Brown argues the merits of the ineffectiveness claim.

of choice by dismissing Mr. Herndon and (2) Mr. Hoover had inadequately argued the Sixth Amendment claim on direct appeal. In Ground Two, Petitioner argues that Mr. Hoover was ineffective for failing to raise Petitioner's trial attorneys' ineffectiveness on direct appeal. (ECF No. 1:5-7; 2:12-34).

## III. STANDARD OF REVIEW

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), this Court's power to grant habeas corpus relief to state prisoners is limited. *Snow v. Sirmons,* 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010) (citing *Snow,* 474 F.3d at 696). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the AEDPA, a petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Review

under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be

'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "'there was no reasonable basis' for the state court's determination."' *Id.* at 1242-43 (citation omitted).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 562 U.S. at 101–02 (2011). Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102. The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citation omitted).

If the state appellate court has not addressed the merits of a claim, the Court exercises its independent judgment. *See Littlejohn v. Trammell*, 704 F.3d 817, 825

(10th Cir. 2013) ("For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'" (citation omitted)). But "[a]*ny* state-court findings of fact *that bear upon the claim* are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'" *Hooks v. Workman*, 689 F.3d 1148, 1164 (2012) (emphases added) (quoting 28 U.S.C. § 2254(e)(1)).

## IV.    STANDARD OF REVIEW FOR MR. BROWN'S HABEAS CLAIMS

Petitioner raises three claims in his habeas petition:

1.    The trial court violated his Sixth Amendment right to choice of counsel by dismissing Mr. Herndon,

2.    Mr. Hoover had inadequately argued the Sixth Amendment claim on direct appeal, and

3.    Mr. Hoover was ineffective for failing to argue, on direct appeal, that both of Mr. Brown's trial attorneys had been ineffective.

(ECF No. 1:5-7; 2:12-34).

As discussed, evaluation of these claims depends on how they had been resolved in state court. On direct appeal, the OCCA addressed the first claim on the merits. (ECF No. 1-2). Thus, this Court should apply deference under the AEDPA in deciding this claim. The remaining two arguments were first raised in Petitioner's post-conviction appeal. The district court addressed the merits of both claims, but the OCCA's disposition of the claims is not altogether clear. (ECF No. 11-5:5-7). Although both claims dealt with appellate counsel's alleged ineffectiveness, they were slightly different. The second habeas claim alleged that appellate counsel had *inadequately argued* a claim on direct appeal and the third habeas claim alleged that appellate counsel *omitted* an issue on direct appeal.

In the Order Affirming Denial of Post-Conviction Relief, the OCCA set forth the standard the Court used in evaluating claims that appellate counsel had been ineffective for omitting an issue on direct appeal. (ECF 1-1:3). After doing so, the OCCA stated: "In the present case, Judge Bass looked to the merits of the issues raised and concluded that appellate counsel's performance was not deficient. We agree." (ECF No. 1-1:3). Based on this merits-based finding, the Court should apply AEDPA deference to Mr. Brown's third habeas claim.

The OCCA then stated: "The counsel of choice claim was raised on direct appeal and is barred by the doctrine of *res judicata* and the remaining issues have been waived." (ECF No. 1-1:3). The reference to *res judicata* relates to the first habeas claim involving allegations that the trial court had violated Mr. Brown's Sixth Amendment right to his choice of counsel. The OCCA had already rejected this claim on direct appeal, so the OCCA correctly found that the claim was barred by *res judicata* in post-conviction proceedings. The only "remaining issue[]" then would be Mr. Brown's claim that his appellate attorney had been ineffective for failing to adequately argue the choice of counsel claim on direct appeal. Thus, the undersigned presumes that the OCCA's reference to waiver referred to this claim.

Oklahoma's application of waiver principles to claims raised in a post-conviction proceeding is both an "independent" and "adequate" state procedural bar. *Brecheen v. Reynolds,* 41 F.3d 1343, 1353 (10th Cir. 1994). Ordinarily, a federal habeas court will not review a claim that has been defaulted in state court on an independent and adequate state procedural ground, unless: (1) Petitioner alleges sufficient "cause" for

failing to raise the claim in the state courts and resulting prejudice or (2) denying review would result in a fundamental miscarriage of justice because Petitioner has made a "credible" showing of actual innocence. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court need not address the issue of procedural default in light of the habeas claim's invalidity on the merits. *See Matthews v. Workman*, 577 F.3d 1175, 1192 n.7 (1992). Under these circumstances, the Court should review Mr. Brown's second habeas claim *de novo. See Cargle v. Mullin*, 317 F.3d 1196, 1205-06 (10th Cir. 2003).

## V.    SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE

At a pretrial hearing, the trial court dismissed Petitioner's first defense attorney, Mr. Herndon, after finding that a conflict of interest had existed due to the fact that Mr. Herndon had previously represented the State's complaining witness. Court Minute Order, *State of Oklahoma v. Brown*, Case No. CF-2009-5049 (Okla. Co. Oct. 29, 2010). In Ground One, Petitioner claims that the trial court's actions violated his Sixth Amendment right to counsel of his choice. (ECF No. 2:12-19). Citing *Wheat v. United States*, 487 U.S. 1243 (1988), the OCCA denied this claim on the merits, stating: "The sparse record before us shows that trial counsel represented the victim of this crime in prior proceedings, and thus a potential conflict of interest existed at the time of trial. Appellant has not shown that the removal of his counsel deprived him of his Sixth Amendment rights." (ECF No. 1-2:2). The OCCA's determination was reasonable.

## A.     The Sixth Amendment Right to Counsel of Choice

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *Wheat v. United States*, 486 U.S. 153, 158 (1988) (quoting U.S. Const. amend. VI). Included in the Sixth Amendment "is the right of a defendant who does not require appointed counsel to choose who will represent him," which "stems from a defendant's right to decide what kind of defense he wishes to present." *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, (2006). However, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159.

## B.     No Violation of the Sixth Amendment

In Ground One, Mr. Brown sets forth three theories to support his claim that the trial court violated his Sixth Amendment rights when it removed Mr. Herndon as Petitioner's first trial attorney:

    (1)    The trial court erred in failing to follow Oklahoma procedural law in evaluating the alleged conflict of interest,

    (2)    The trial court effectively shifted the burden of proof to Mr. Brown to prove that a conflict did not exist, and

    (3)    No conflict actually existed which would have warranted Mr. Herndon's dismissal.

In *Wheat*, the United States Supreme Court addressed the issue of balancing a defendant's Sixth Amendment right to his counsel of choice with the fair administration of justice. In particular, the Court addressed the circumstances under which a district

court may override a defendant's waiver of his attorney's conflict of interest. At the outset, the Court in *Wheat* noted that the Sixth Amendment favored a defendant's counsel of choice, but that the Amendment could be circumscribed in several respects. *Wheat*, at 159. For example, the Court stated, a defendant may not insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party. *See id.* at 159.

When alerted to the possibility of a conflict, *Wheat* stated that the trial court has an independent duty to ensure that a criminal defendant receives a fair trial. *Id.* at 161. Although a presumption exists in favor of a defendant's counsel of choice, the presumption may be overcome by a demonstration of actual conflict or the showing of a "serious potential for conflict." *Id.* at 164. The Supreme Court did not define the necessary parameters to establish "a serious potential for conflict." Instead, the Court stated: "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.*

Petitioner argues that Oklahoma law requires a potential conflict to be developed through an evidentiary hearing, followed by findings of fact and conclusions of law. (ECF No. 2:15-16). According to Petitioner, "where the district court disqualifies counsel without the requisite motion, hearing, and findings, the remedy on appeal is reversal." (ECF No. 2:15-16). But on habeas review, the question is not whether state procedural law was followed, but instead, whether a violation of federal law occurred. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law.") (internal citation and quotation marks omitted)).

In *Wheat*, the Court stated: "[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may *or may not* burgeon into an actual conflict as the trial progresses." *Wheat*, at 163 (emphasis added). Thus, when it became apparent that Mr. Herndon had previously represented the State's complaining witness, the trial judge was free to exercise his "substantial latitude" to dismiss Mr. Herndon even though an actual conflict "*may not* burgeon . . . as the trial progresse[d]." *Id.* at 163 (emphasis added). *Wheat* dictates no particular procedure to be followed, but instead, leaves the evaluation "to the informed judgment of the trial court." *Id.* at 164. Thus, the trial judge did not violate Mr. Brown's Sixth Amendment rights by summarily dismissing Mr. Herndon as defense counsel after being alerted to a potential conflict.

Petitioner also argues that the trial court "failed to establish facts sufficient to overcome the presumption favoring Petitioner's chosen counsel." (ECF No. 2:16). Mr. Brown correctly states that *Wheat* recognizes a presumption in favor of a defendant's counsel of choice. (ECF No. 2:16, citing *Wheat* at 164). According to Petitioner, *Wheat* dictates that this presumption can only be overcome by showing an "actual" or "serious potential" for conflict. (ECF No. 2:16-17, citing *Wheat* at 164). Mr. Brown contends that the district court failed to overcome this presumption because under Oklahoma law, "the district court established only a prior representation . . .[and] failed to establish Mr. Herndon's possession of relevant confidential information or his participation in a

"substantially related matter." (ECF No. 2:17). Again, Petitioner's reliance on state law is inconsequential to his federal claim. As discussed, *Wheat* requires only that a potential conflict exist, which could occur if an attorney "has a previous or ongoing relationship with an opposing party." *See Wheat,* at 159. Upon this showing, the district court may exercise "substantial latitude" in determining whether to disallow representation. *Id.* at 163.

Petitioner also contends that the OCCA "reversed the presumption favoring Mr. Brown's counsel of choice" when it stated: "Appellant has not shown that the removal of his retained counsel deprived him of his Sixth Amendment rights." (ECF No. 2:17) (citing the OCCA Summary Opinion). But the OCCA had rejected Mr. Brown's Sixth Amendment claim because the record had shown a potential conflict had existed, based on the fact that "trial counsel had represented the victim of this crime in prior proceedings." (ECF No. 1-2:2). This rationale comports with *Wheat*, and as such, the Court should reject this theory.

Finally, Petitioner argues that "the record *now proves* that Mr. Herndon labored under no conflict of interest warranting his dismissal." (ECF No. 2:17) (emphasis added). But *Wheat* specifically discounted "the wisdom of hindsight" in evaluating whether a district court had properly disallowed a waiver of conflict, instead noting that the determination "unfortunately" had to be made in "the murkier pretrial context when relationships between parties are seen through a glass, darkly[,] . . . [and] [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict[.]" *Wheat*, at 162. While subsequent findings may establish the absence of an

actual conflict, the relevant question under *Wheat* is whether, in "the murk[y] pretrial context," the trial court had a basis on which to believe that a potential conflict existed, regardless of whether an actual conflict was later proven or disproven. *See Wheat*, at 162, 163.

It is undisputed that Mr. Herndon had represented the victim in a prior case. Based on the previous representation, a potential conflict existed and as a result, the trial court disqualified Mr. Herndon as Petitioner's defense counsel. Citing *Wheat*, the OCCA concluded that the trial court's actions did not violate Mr. Brown's Sixth Amendment rights. The determination was reasonable and as a result, Mr. Brown is not entitled to habeas relief on this part of Ground One.

## VI.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

On direct appeal, Petitioner's attorney, Mr. Hoover, argued that the trial court improperly deprived Mr. Brown his choice of counsel by dismissing Mr. Herndon. (ECF 11-1). In the habeas petition, Mr. Brown argues that Mr. Hoover was ineffective in two ways:

1.    Mr. Hoover inadequately argued the issue concerning his choice of counsel, and

2.    Mr. Hoover failed to argue that both of Mr. Brown's trial attorneys had been ineffective.

(ECF No. 2:19-34). As discussed, the first claim should be reviewed *de novo*, and the second claim should be examined utilizing AEDPA deference. *See supra* pp 8-10.

## A. Standard for Proving Ineffective Assistance of Appellate Counsel

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) governs the analysis of Petitioner's claims that his appellate counsel was ineffective *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* to habeas petitioner's claim that appellate attorney had presented an inadequate argument on appeal); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to claim of attorney error on appeal); *see also Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (noting that ineffective assistance of appellate counsel claims are governed by "the same test as used in evaluating a claim of ineffective assistance of trial counsel).

Pursuant to *Strickland*, Petitioner "must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceedings . . . would have been different." *Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003). When alleging ineffective assistance of appellate counsel for omitting a particular issue on appeal, the merits of the omitted issue must be examined. *See Hain v. Gibson*, 287 F.3d1224, 1231 (10th Cir. 2002) (application of *Strickland* requires the court to "look to the merits of the omitted issue.").

## B. Petitioner's Claim Regarding Ineffective Assistance of Appellate Counsel for Presenting an Inadequate Argument on Direct Appeal

On direct appeal, Mr. Hoover argued that the trial court had erred in removing Mr. Herndon as Petitioner's counsel of choice. (ECF No. 11-1:9-16). In the habeas petition, Mr. Brown argues that Mr. Hoover had inadequately argued this claim on direct

appeal. (ECF No. 2:19-23). In support of this theory, Petitioner claims that Mr. Hoover should have presented three arguments in the appeal:

1. The trial court erred in failing to follow Oklahoma procedural law in developing the alleged conflict of interest,

2. The trial court effectively shifted the burden of proof to Mr. Brown to prove that a conflict did not exist, and

3. No conflict actually existed which would have warranted Mr. Herndon's dismissal.

Reviewing the claim *de novo*, the Court should conclude that Mr. Hoover did argue the first two issues, and although he omitted the third issue, its inclusion would not have affected the appeal.

Although perhaps not couched in Petitioner's preferred language, Mr. Hoover effectively presented the first two arguments on direct appeal. For example, with respect to a procedural challenge, Mr. Hoover argued:

> In Appellant's case, the Court Minute order shows that the trial court relied exclusively on the fact that Mr. Herndon had previously represented the complaining witness. The court did not make an independent finding of fact or conclusion of law in deciding that a conflict existed and that the conflict was so great that it required the court to deprive Appellant of his right to his choice of counsel.
>
> . . .
>
> The record made at the Preliminary Hearing shows that Mr. Herndon represented Mr. McDonald in few legal matters and that the representation was in matters unrelated to this case. Nothing more can be gleaned from the record. Yet, the trial court was willing to usurp Appellant's choice of counsel without making any further inquiry to determine if, in fact, the representation would be to the disadvantage of Mr. McDonald or would result in the revelation of information relating to the representation.

> Because the prosecutor did not file a written motion, and the trial court did not make an on-the-record inquiry of the matter, and the court did not make a detailed finding of fact and conclusion of law, the record is insufficient for this Court to conclude that the trial court "justifiably" found a conflict of interest sufficiently great to deprive Appellant of his Fifth [sic] Amendment right to his counsel of choice.

(ECF No. 11-1:13). Likewise, Mr. Hoover also adequately raised the burden of proof issue. In the direct appeal brief, Mr. Hoover stated: "Allowing the prosecutor's allegations to disqualify the defendant's choice of counsel has constitutional implications and effectively removes the right to choice of counsel from the Defendant and places it in the State's hands." (ECF No. 11-1:15).

Finally, Petitioner alleges that Mr. Hoover should have argued the absence of an actual conflict of interest to support his Sixth Amendment claim. But under Supreme Court precedent, proof of an actual conflict was not required for Mr. Herndon's removal.

As discussed, in *Wheat*, the Supreme Court stated that a criminal defendant may not insist "on the counsel of an attorney who has a previous or ongoing relationship with an opposing party[.]" *Wheat*, at 159. And far from requiring proof of an actual conflict of interest, the Court stated: "[t]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. Finally, the Court held that the trial judge had "substantial latitude" to "evaluat[e] . . . the facts and circumstances of [the] case" utilizing its "informed judgment." *Wheat*, at 163-64. Under *Wheat*, there is no merit to Petitioner's theory regarding proof of an actual conflict as a prerequisite to dismissing

Mr. Herndon. Thus, in the absence of a meritorious claim, Mr. Hoover was not ineffective under *Strickland* for failing to argue the issue on direct appeal.

## C. Petitioner's Claim Regarding Ineffective Assistance of Appellate Counsel for Failing to Raise Trial Counsels' Ineffectiveness on Direct Appeal

In Ground Two, Petitioner contends that on direct appeal Mr. Hoover failed to argue that Mr. Brown's two trial attorneys, Mr. Herndon and Mr. Pool, had rendered ineffective assistance. (ECF No. 2:24-34). Specifically, Mr. Brown alleges that Mr. Herndon was ineffective for failing to communicate and discuss a plea offer. (ECF No. 2:26-28). Petitioner alleges that Mr. Pool was ineffective for failing to: (1) discover whether a plea agreement had been offered to Petitioner prior to trial and (2) relay and discuss a plea offer which had been made the day of trial. (ECF No. 2:28-31). Petitioner raised the issues of trial and appellate counsels' ineffectiveness in his post-conviction application. To resolve the issues, the district court held an evidentiary hearing and issued findings of facts and conclusions of law. The court stated:

> Petitioner claims that Mr. Herndon rejected the District Attorney's plea offer without ever consulting him, therefore concluding that Mr. Herndon was ineffective. However, in the evidentiary hearing, Mr. Herndon testified he discussed the plea offer with the Petitioner for about five minutes and after which they decided not to accept the offer. Clayton Niemeyer, the district attorney, testified that Mr. Herndon said something in relation to the fact that "we're going to trial on this thing; my client's not guilty." However, the offer still remained open and available to the Petitioner. Petitioner admitted in his application, to this court, that he accepted Mr. Herndon's legal advice and wanted to go to trial. The record is sufficient to show that petitioner always desired to proceed to trial and reject the State's offer. Therefore, this claim is without merit and must be denied.

> Additionally, Petitioner claims that Mr. Poole was ineffective trial counsel. Petitioner bases this claim off of the fact that Mr. Poole failed to

negotiate a plea before trial. Even though Mr. Poole did not inquire into any possible plea negotiations with the District Attorney, the court took a recess during the trial for the purpose of discussing a plea deal to resolve the case. On the record, Mr. Brown stated he had discussed the possibility of a plea but wished to continue to trial. Petitioner argues that Mr. Poole did not advise him regarding the desirability of taking a plea; however, this is not supported by the record and is only a bald assertion which is insufficient to establish prejudice. Even if Mr. Poole was deficient in regards to negotiating a plea, the Petitioner did not suffer prejudice since it is clear from the record that he was determined to go to trial, so he could testify in hopes of helping his son. The Court has ruled that just because an attorney may be deficient in counsel, the defendant must suffer prejudice in order for the attorney to be found guilty of ineffective assistance of counsel.

Finally, Petitioner argues that Mr. Poole was deficient because he neither advised his client to the desirability of the plea agreement, nor did he negotiate a more favorable plea agreement when questioning the likelihood of success for Petitioner. . . Here, Mr. Pool was not impressed with Mr. Brown's likelihood of success, but he believes he encouraged Petitioner to take a plea deal and that it was not a good idea to testify. When it came to the possibility of plea negotiations, Mr. Pool stated "Tracy made it very plain that he didn't want to have anything to do with any kind of an agreement." In light of the information provided to this Court and what the record shows, Mr. Poole did not ineffectively assist Mr. Brown as his counsel in his trial. The Petitioner's claim is denied.

Petitioner argues that appellate counsel was ineffective for failing to raise claims that both of his trial lawyers were ineffective[.] . . . This Court has found that the claim was without merit and trial counsel was not ineffective. Therefore, appellate counsel cannot be ineffective for failing to raise a non-meritorious claim. Petitioner's claim is denied.

(ECF 11-5:3-6). On post-conviction appeal, Petitioner argued that Mr. Hoover had been ineffective for failing to raise the issue of trial counsels' ineffectiveness on direct appeal. (ECF No. 11-5). In its decision, the OCCA deferred to the district court's findings regarding the claims of appellate counsel's and trial counsels' ineffectiveness. (ECF No. 1-1:3).

Because the OCCA addressed the claim of ineffective assistance of appellate counsel, including the merits of the underlying issues, this Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter,* 562 U.S. 770, 785 (2011). Instead, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Harrington v. Richter,* 562 U.S. 770, 785 (2011).

Under *Strickland*, the defendant must prove a reasonable probability that, if Mr. Hoover had raised the claim, the outcome of the direct appeal would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The OCCA properly rejected Petitioner's claim for ineffective assistance of appellate counsel because the underlying claims were without merit. *See Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999) (counsel's failure to raise a meritless issue does not amount to constitutionally ineffective assistance). This determination was not contrary to, nor an unreasonable application of, Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief on this claim.

## VII. RECOMMENDATION

It is recommended that Mr. Brown's Petition for Writ of Habeas Corpus **(ECF No. 1)** be **DENIED**.

## VIII. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **June 6, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate

review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**IX.    STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on May 18, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE